In The United States District Court
For the Eastern District of Virginia

Alexandria Division

| | |  |
|---|---|---|
| Certification Trendz | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Freetech Services, Ltd. | ) | |
| | ) | |
| v. | ) | Case No. 1:16cv1048 - TSE-IDD |
| | ) | |
| Kashif Rashid aka Kashif Rasheed, | ) | |
| | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

<u>Memorandum of Law In Support of Motion to Dismiss for Lack of Jurisdiction</u>
<u>Improper Joinder or, in the alternative,</u>
<u>to Deny Temporary Restraining Order</u>

Comes Now Kashif Rashid, Jamal Ramzan and Alpolink (UK) Ltd., by counsel, and files this Memorandum of Law In Support of their Motion to dismiss pursuant to Federal Rule of Civil Procedures 12(b)(1) and 12(b)(2) for lack of both subject matter and personal jurisdiction. Further, this matter should be dismissed for improper joinder of both Plaintiffs and Defendants pursuant to FRCP 20. In the alternative, should the Court accept jurisdiction, Kashif Rashid, Jamal Ramzan and Alpolink (UK) Ltd. request that the Temporary Restraining Order be denied. Nothing filed herein shall be construed as accepting jurisdiction.

I. Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) permits a party to move for dismissal of a claim where the Court lacks subject matter jurisdiction. The allegations in the Complaint relating to this Court's jurisdiction revolve around allegations of infringement by certain domain names alleged to be held by one of the various Defendants.[1]

The matter before the Court involves 36 domain names and an allegation by the Plaintiff that a variety Defendants, known and unknown, have engaged in a conspiracy to infringe on their purported marks. The Plaintiff further argues, relying on an 84 page declaration with hundreds of pages of exhibits, that the ownership of the domains are intertwined.

There are a number of problems with the declaration and it's attachments which raise substantial concern regarding its reliability. While, given the short period of time available, counsel has not been able to analyze each and every page and attachment a number of troubling things have been discovered. A number of the WHOIS records which purport to provide information as to particular domain names do not show the subject domain name, meaning it is unclear as to which domain name the WHOIS record relates.

For example, in the declaration on page 44 the declarant identifies exhibit 121 as the WHOIS record for <originaltestking.com>, one of the disputed domain names. Exhibit 121, however, does not show the domain name – it shows no domain name so that you cannot tell to which domain name the record refers.

---

[1] The phrase "alleged" to be owned is used because at least two of the subject domain names are, upon information and belief, owned by an individual related to the Plaintiffs and a number are controlled by an entity related to Plaintiff Certification Trendz.

What exhibit 121 does show is that the referenced domain name is hosted at 4cert.com, an entity controlled by Global Simulators, an entity related to the Plaintiff Certification Trendz (the directors of both entities are husband and wife). This means that, according to the Plaintiff's own declaration at page 44, this domain name is controlled by an entity related to the Plaintiffs and not any of the Defendants.

Similarly <originaltestking.com> (Declaration page 44, Exhibit 121), <real testking.net> (Declaration page 45, Exhibit 123), <testking.in> (Exhibit 124), <testkingcert.com> (Declaration page 45, exhibit 125), <testkingone.net> (Declaration page 45, Exhibit 127), and <testkingoneline.net> (Declaration page 46, Exhibit 128) are all hosted at 4cert.com and therefore under the control of an entity related to the Plaintiff Certification Trendz and none of the Defendants.

As counsel for the Plaintiff notes on page 4 of the *ex parte* motion and memorandum of law in support of their request for temporary restraining order, there is litigation pending before the Grand Court of the Cayman Islands. Plaintiff Freetech filed a Complaint in Accordance with the Uniform Domain Name Dispute Resolution Policy relating to the domain pass4sures.com. (Complaint attached as Exhibit 1.) In this UDRP Complaint, the Plaintiff makes substantively the same allegations made before this Court.

On page 11 at paragraph 9 of the UDRP Complaint, Plaintiff Freetech states that it will submit, with respect to any challenges to the administrative ruling, to the location of the principal office of the concerned registrar. On page 3 of the Plaintiff's UDRP Complaint, the registrar is listed as Uniregistrar Corp located in Grand Cayman, Cayman Islands. As the Plaintiff agreed to

Cayman Islands jurisdiction, subject matter jurisdiction resides in the Cayman Islands.[2] Further, the domain <pass4sures.com> is frozen by the Cayman Island Courts and cannot be transferred.

While the above argument relates to one domain name, <pass4sures.com>, the Plaintiff's argument is that there is an interlocking relationship between the (alleged) owners of the subject domain names. Based on these allegations, the claims asserted before this Court are part in parcel with the claims proceeding before the Court's of the Cayman Islands where the Plaintiff consented to jurisdiction.

In addition, upon information and belief, at least two of the disputed domain names, <testking.in> and <testingcert.com> were transferred in July of 2012 to Shamaila Shafiq represented by Robert A. Auchter of McKool Smith counsel for the Plaintiff in this matter. Upon information and belief, Ms. Shafiq is married to Shazad Shahnawaz, the Director of Certification Trendz.

Further, all of the parties – Plaintiffs and Defendants, are located in the United Kingdom and have no contacts with the Commonwealth of Virginia.

Given that the Plaintiff agreed to submit to the jurisdiction of the Cayman Islands, has based their claims on interlocking ownership of the subject domains, and appears to have some confusion as to the ownership of a number of the subject domain names, the proper Court to hear these matters is in the Cayman Islands.

---

[2] Perhaps the more accurate way to present this is as a matter of contract: the Plaintiff contracted to subject itself to the Cayman Islands jurisdiction and cannot, therefore, seek other jurisdiction.

## II. Lack of Personal Jurisdiction

This matter should also be dismissed pursuant Federal Rule of Civil Procedure 12(b)(2) as this Court lacks personal jurisdiction over Kashif Rashid, Jamal Ramzan or Alpolink (UK) Limited. In order to assert jurisdiction over a defendant, the plaintiff must satisfy the requirements of due process by showing sufficient contacts such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. V. Washington, 326 U.S. 310, 316 (1945). The plaintiff must show that the defendant purposefully directed its activities into the forum state and that it would reasonably anticipate being haled into the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

The Fourth Circuit has established a three part test for determining whether sufficient contacts exist: 1) the extent to which the defendant purposefully availed itself of the privileges of conducting activities in the state; 2) whether the claims arise out of the activities directed to the state and 3) whether exercise of personal jurisdiction is constitutionally permissible. Consulting Eng'rs Corp. v. Geometric, 561 F.3d 373, 278 (4thCir. 2009).

### 1. Purposeful Availment

The allegations made by the Plaintiff as to jurisdiction relate to the domain registration contracts. None of the allegedly infringing domain names have registration contacts with an entity in Virginia. While the registry is in Virginia, there is no privity of contract between the allegedly infringing domains and any entity in Virginia. As noted above, the agreement as to the core domain provides for jurisdiction in the Cayman Islands. While the ACPA does provide *in rem* jurisdiction where, unlike here, no defendant can be served the matter before the Court is not

5

*in rem* and the Plaintiffs are well aware of where and how to serve defendants in the United Kingdom.

The allegations relating to personal jurisdiction (paragraph 66 of the Complaint) contain bald assertions of conducting business in the Commonwealth of Virginia without any facts to support such an assertion. The conduct complained of is an alleged conspiracy to infringe on claimed intellectual property rights by domains, one of which is subject to litigation in the Cayman Islands and several of which appear to be under the control of an entity related to the Plaintiff Freetech. There is no allegation of any substantive contacts by any of the Defendants in the Commonwealth of Virginia and Kashif Rashid, Jamal Ramzan and Alpolink (UK) Ltd. state that they have no business contacts with The Commonwealth of Virginia.

Where challenged, the Plaintiff bears the burden of proving the basis for personal jurisdiction. Mylan Laboratories, Inc. v. Akzo, N.V., 2 F3d 56, 59-60 (4th Cir. 1993), Board of Trustees v,. McD Metals, Inc., 964 F.Supp. 1040 (E.D. Va. 1997). The Plaintiffs jurisdictional allegations contain no substantive contacts with the Commonwealth of Virginia and are, therefore, insufficient to support personal jurisdiction.

2. Claims Arise out of Activities in the State

As noted above the "activities" alleged in the Complaint are insufficient to support a claim for jurisdiction. The claims arise out an alleged conspiracy to infringe on claimed intellectual property rights in the registration of certain domain names. As also noted above, at least one of these domain names is already the subject of litigation between the parties and a number of the subject domain names appear to be controlled by an individual related to the Plaintiffs. As there are no allegations of activities within the Commonwealth of Virginia, the

6

claims – focused on the registration and use of the domains - cannot arise out of activities in the Commonwealth of Virginia.

     3.  Constitutionally Permissible

The plaintiff must show that the defendant purposefully directed its activities into the forum state and that it would reasonably anticipate being haled into the Commonwealth of Virginia.   There are no allegations in the Complaint that show that the Defendants directed activities into the Commonwealth of Virginia and nothing to show that the Defendants could reasonably anticipate being haled into Court in Virginia.   To the contrary, the pending litigation in the Cayman Islands supports the contrary expectation.   Further, all of the parties are located in the United Kingdom and would have no reason to believe they would be haled into the Court in the Commonwealth of Virginia.

III.  Improper Joinder

     Federal Rule of Civil Procedure Rule 20 permits joinder in one action if they assert a right to relief that arises out of the same transaction and there are questions of fact and law that are common to all plaintiffs.   FRCP 20.

     1. Plaintiffs

     The Plaintiffs in this matter are two United Kingdom corporations alleging trademark rights in two different marks, one owned by each corporation.   The facts necessary to support the claims of Plaintiff Certification Trendz, Ltd., allegations relating to the claimed mark "Test King" are unrelated to the facts necessary to support the claims of Plaintiff Freetech Services, Ltd. which relate to the claimed mark "Pass4sure."   The facts and transactions that each Plaintiff must prove are, therefore, necessarily different.

2. Defendants

The Complaint lists 8 named defendants as well as 25 "John Doe" defendants, of which three are represented in this matter. The allegations, as noted above, involve two different claimed trademarks and 36 different domain names, some of which appear to be controlled by an entity related to Plaintiff Freetech. The facts that the Plaintiffs must show to support their claims against each of the named defendants vary substantially – there are different marks and different domain names. The Plaintiff merely asserts that each of the subject domain names is "owned or operated" by one of the 33 named Defendants, although it appears that a number of them are owned by an individual related to the Plaintiff Freetech. Without more, this is insufficient. The facts vary substantially between defendants as does the law - whether an individual domain name infringes on the claimed intellectual property rights of the Plaintiffs would require an analysis of each domain separately and the relief sought against one defendant is different than that sought against another depending on ownership and control of the relevant domain names. Further the bald allegations of conspiracy, absence any factual foundation, is insufficient to support joinder.

IV.  Temporary Restraining Order Not Warranted

Further, should this Court believe it is appropriate to assert both subject matter and personal jurisdiction over Kashif Rashid, Jamal Ramzan or Alpolink (UK) Ltd., Kashif Rashid, Jamal Ramzan and Alpolink (UK) Ltd. object to the entry of an *ex parte* temporary restraining order. To support issuance of a temporary restraining order, the Plaintiff must show 1) likelihood of irreparable injury if injunction denied; 2) likelihood of harm to the Defendants if granted; 3) likelihood of success on the merits and 4) the public interest.   Blackwelder

Furniture Co. v. Seilig Mfg. Co., 550 F2d 189 (4th Cir. 1977).

The court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.   Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 542 (1987).   Mere financial harm, even substantial, is insufficient to meet the "irreparable" injury standard.   Virginia Petroleum Jobbers Ass'n v. Federal Power Comm., 259 F.2d 921, 925 (D.C. Cir. 1958), quoted in Sampson v. Murray, 415 U.S. 61, 92 (1974).

    1. Likelihood of Irreparable Injury If Injunction Denied

As noted above, the parties to this matter are litigating before the Courts of the Cayman Islands regarding one of the subject domain names.   Upon information and belief, no preliminary injunction has been sought in those proceedings supporting the contention that the harm, if any, to the Plaintiff is minimal.   Further, the bulk of the relief sought in the injunction are financial – freezing of assets and accounts - demonstrating that the relief sought is mainly financial which is insufficient to warrant an injunction.   The Plaintiffs fail to allege any factual basis for loss of sales or harm to goodwill necessary to support issuance of an injunction.

    2. Likelihood of Harm to the Defendants If Granted

The harm to the Defendants if the Injunction were granted is substantial.   The relief sought would freeze all assets of all of the Defendants relating to all of their business activities.  The Plaintiff argues, without a factual basis, that the Defendants (known and known) have a "demonstrated willingness to engage in fraudulent business practices" in support of their claim for an injunction.   (Ex Parte Motion and Memorandum In Support of Plaintiffs Ex Parte Motion for (1) Temporary Restraining Order and (2) Order to Show Cause, page 12.)

9

On the contrary, this is a standard trademark dispute matter - and no facts support an allegation of fraudulent conduct by any of the Defendants. In the absence of such conduct, an Injunction freezing all assets of all of the Defendants related to each of the domain names (including the one subject to the jurisdiction of the Cayman Islands and the two that appear to be owned by a person related to the Plaintiffs) is over reaching and unwarranted.

Further, the Defendants have a number of unrelated business interests and the global freezing of assets sought here would necessarily attach unrelated assets and interfere with their ability to mount a defense to both this matter as well as the ongoing matter in the Cayman Islands.

3. Likelihood of Success on the Merits

Counsel has only been retained for a day and a half and has had limited ability to evaluate the allegations contained in the 134 paragraph complaint but notes that at least one the marks is not distinctive as it is still within the relevant review period, that the "King of Tests" suggests merely someone who is very good at tests and pass4sure sounds like (1980s) slang.

4. The Public Interest

This matter is a dispute between competitors and there is no public interest one way or the other.

Conclusion

   For the reasons set forth above, Kashif Rashid, Jamal Ramzan, and Alpolink (UK), Ltd. request that this matter be dismissed or, in the alternative, that no temporary restraining order issue.

   Date: August 25, 2016

                   Respectfully submitted,

                   Kashif Rashid, Jamal Ramzan, and
                   Alpolink (UK), Ltd.
                   By Counsel

   /s
_____
Jonathan Westreich, Esq.
VSB No. 37393
Greenberg & Lieberman, LLC (of counsel)
604 Cameron Street
Alexandria, Virginia 22314
703-299-9050 / fax: 703-548-1831
jonathan@westreichlaw.com
and
Stevan Lieberman, Esq.
Greenberg & Lieberman, LLC
1775 Eye Street NW, #1150
Washington, D.C. 20006
(202) 625-7000, Fax: 202-625-70001
Stevan@aplegal.com
and
Karen J. Bernstein, Esq.
Bernstein IP
200 Park Avenue, Suite 1700
New York, NY 10166
Tel: (212) 339-9955
E-Mail: kjb@bernsteinip.com

           Counsel to:
     Kashif Rashid, Jamal Ramzan and Alpolink (UK) Ltd.

Certificate of Service

I hereby certify that I sent the foregoing by Email and U.S. Mail this 25th day of August, 2016 to:

Brandon M. Jordan, Esq.
Robert A. Auchter, Esq.
McKool Smith
1999 K Street, N.W., #600
Washington, D.C. 20006
202-370-8387
bjordan@mckoolsmith.com
rachter@mckoolsmith.com

/s
_____
Jonathan Westreich, Esq.